**LIBERTY MUTUAL INSURANCE COM-PANY, as partial assignee and subrogee of Alfonse Marchica, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 138, Docket 26462.

United States Court of Appeals Second Circuit.

Argued Jan. 5, 1961.

Decided May 11, 1961.

Thomas F. Keane, Brooklyn, N. Y. (Albert P. Thill, Brooklyn, N. Y., of counsel), for plaintiff-appellant.

George Cochran Doub, Asst. Atty. Gen., Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Alan S. Rosenthal, Herbert E. Morris, Attys., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before LUMBARD, Chief Judge, and MAGRUDER and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Alfonse Marchica, a longshoreman employed by Monti Marine Corporation, was injured in the course of his employment on March 18, 1958 aboard defendant's vessel "General Buckner." On November 16, 1959 Marchica accepted compensation from plaintiff Liberty Mutual Insurance Company, his employer's workmen's compensation insurance carrier, under an award pursuant to Section 33 (33 U.S.C.A. § 933) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. On March 7, 1960, less than four months after Marchica's acceptance of the compensation award, but only eleven days prior to the expiration of a two-year time bar within which the United States could be sued for having caused Marchica's injuries,[1] plaintiff instituted an action against the defendant United States, alleging that Marchica's injuries were caused by defendant's negligence and the unseaworthiness of its vessel. Upon defendant's motion Judge Bartels of the United States District Court for the Eastern District of New York dismissed the action as prematurely brought. Plaintiff appeals. The sole question on appeal is whether under the provisions of 33 U.S.C.A. § 933 plaintiff was empowered to commence this action on March 7, 1960.

Section 933(h) provides that: "Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier shall be subrogated to all the rights of the employer under this section." Therefore, once appellant made compensation payments under the award to Marchica it was subrogated to the rights against third persons possessed by the employer it had contracted to cover.

Sections 933(a) and (b) provide:

"§ 933. Compensation for injuries where third persons are liable

"(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person *unless such person shall commence an action against such third person within six months after such award.*" (Emphasis supplied.)

In his opinion below in this case, Liberty Mutual Ins. Co. v. United States, D.C.E.D.N.Y.1960, 183 F.Supp. 944, Judge Bartels construed the emphasized language to mean that the injured employee had an exclusive right to sue during the six months subsequent to a compensation award, and the statutory assignment of the employee's cause of action gave the employer no right to sue until the termination of this six month period. We are in accord with this interpretation. It is supported by the legislative history of the section as that history is set out and discussed by the lower court at 183 F.Supp. 945–946. We hold that during the six months' period within which the employee retains the cause of action neither the employer nor its subrogated compensation carrier may initiate an action against an alleged third party tort-feasor, but of course can obtain reimbursement for compensation payments out of any sum the employee may recover in a suit initiated by him during that time. International Terminal Operating Co. v. Waterman Steamship Co., 2 Cir., 1959, 272 F.2d 15, certiorari denied 1960, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739.

1. 46 U.S.C.A. § 745 and 28 U.S.C. § 2401 (b).

Appellant complains that this interpretation of the statutory language is unrealistic for if, as here, an injured employee does not choose to bring suit against the third party and does not accept a compensation award until within six months of the time-bar expiration date, the employer and its insurance carrier are forever prevented from obtaining any reimbursement from the tortfeasor. We recognize this to be so, but the unfortunate position in which plaintiff finds itself to be is not a unique one. See, e. g., Hartford Accident & Indemnity Co. v. Eastern Air Lines, D.C.S.D. N.Y.1957, 155 F.Supp. 263; Hartford Accident & Indemnity Co. v. United States, D.C.S.D.N.Y.1955, 130 F.Supp. 839. If relief from operation of the statute is indicated it must be sought from the Congress and not from the courts.

Affirmed.

LUMBARD, Chief Judge (dissenting).

Since I think that the plaintiff was entitled to maintain its suit against the United States, the alleged tort-feasor, in order to vindicate its claim as a partial subrogee of the rights of the injured longshoreman, I would reverse the order of the district court which granted summary judgment and dismissed the complaint.

My brethren here deny relief to the plaintiff-insurer on the ground that the employer (to whose rights the insurer is subrogated), under the recently enacted amendment to 33 U.S.C.A. § 933(b), is assigned the rights of the employee only upon the expiration of six months from the date of the compensation award. What they overlook entirely is the equitable doctrine of subrogation, which grants the employer the right to stand in the

employee's shoes to the extent of any compensation payments that have been made.

My dissent in this case is not based on any difference with the majority regarding the intent of Congress as revealed by the legislative history of the recent amendment to 33 U.S.C.A. § 933 (b). Congress may indeed have intended that the assignment of the right to recover damages prescribed by that section should not take effect until the six months in which the employee could sue have expired. But the policy which impelled Congress to amend the statute is entirely consistent with continued recognition of the right of the employer or his insurer, 33 U.S.C.A. § 933(h), to sue as a subrogee.[1]

Prior to its amendment the statute provided for the automatic assignment of an employee's rights against third parties once he chose to accept a compensation award from his employer or the employer's insurer. If the assignee then sued the tortfeasor, the assignee was obliged to pay to the employee the amount by which the recovery exceeded the compensation previously paid plus expenses of litigation. Having no personal interest in recovering more than the amount spent for compensation, assignees were not adequately protecting the interests of the injured employees. Congress therefore granted the employees six months beyond the date of a compensation award in which to assert their claims against the real party at fault.

By permitting employers or insurance companies which have made compensation payments to sue the tortfeasors as subrogees during this six-month period, we would not be prejudicing the rights of

1. The difference between a suit brought by an employer as a statutory assignee of the employee's rights and the suit brought by him as a subrogee is simply that the assignee is empowered to control and settle the rights of the employee as well as his own. The subrogee who recovers or compromises does so only with respect to his own interest and does not bind the other parties in interest.

Although the assignee may compromise the employee's claim, he stands on a fiduciary relationship to the employee and may not disregard the employee's interest. See United States Fidelity & Guaranty Co. v. United States, 2 Cir., 1945, 152 F.2d 46, 48; Czaplicki v. The Hoegh Silvercloud, 1956, 351 U.S. 525, 535, 76 S.Ct. 946, 100 L.Ed. 1387 (Frankfurter, J., concurring).

the employees. Any settlement of a suit instituted by a partial subrogee would not, of course, bind the employee, who could proceed as he wished during the half year allotted to him. The purpose of the statutory amendment is in no way furthered by construing it so as to extinguish the right of subrogation during the six-month period. In fact, it seems most probable that Congress' failure to advert to the possible effects of the amendment on employers or insurers who have made compensation payments was the result of an assumption that these parties would continue to be protected by reason of their rights as subrogees. It is entirely consistent with the policy of the amendment to construe it so as to permit only the employee to sue before a compensation payment is made, to authorize both parties to protect their own interests separately during the six months immediately following a compensation award, and to assign sole control over claims against the tortfeasor to the employer or insurer if the employee chooses to take no separate action within the half year.

The statutory assignment of rights prescribed by 33 U.S.C.A. § 933(b) "[is] in aid of the employer and not a limitation upon his right to subrogation." The Etna, 3 Cir., 1943, 138 F.2d 37, 40. The holding of The Etna—that a right of subrogation exists in favor of the employer who has made compensation payments although he cannot qualify for the assignment of rights granted by 33 U.S.C.A. § 933(b)—was adopted by this circuit in its summary affirmance at 2 Cir., 1953, 205 F.2d 151 of Fontana v. Pennsylvania R. R., D.C.S.D.N.Y.1952, 106 F. Supp. 461; see International Terminal Operating Co. v. Waterman S. S. Co., 2 Cir., 1959, 272 F.2d 15, certiorari denied 1960, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed. 2d 739.

Regardless, therefore, of the insurer's ability or inability to qualify as an assignee under 33 U.S.C.A. § 933(b), (h), until six months after the compensation award, the insurer was subrogated as of the time when it made payments to so much of the employee's claim as equaled the payments made. Jarka Corp. v. Fireman's Fund Indemnity Co., 1954, 286 App.Div. 148, 142 N.Y.S.2d 369, appeal dismissed 1955, 309 N.Y. 909, 131 N.E. 2d 908; cf. Chapman v. Hoage, 1936, 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370.

It is only if a partial subrogee cannot sue in its own name to assert its claim for its own share that the plaintiff should be barred here. This may have been the law before the adoption of the Federal Rules of Civil Procedure. In Doleman v. Levine, 1935, 295 U.S. 221, 225, 55 S.Ct. 741, 744, 79 L.Ed. 1402, the Supreme Court held that a partial subrogee "is entitled to his share of the proceeds of the action when recovered and may secure their recovery by resort to equity, in a suit joining proper parties, to compel action by the legal owner and appropriate distribution of the proceeds." The court denied the employer-subrogee the right to sue in its own name because it held that to permit such a suit would be "to do violence to the firmly grounded tradition of the unity of a cause of action at law, by casting on the defendant the burden of defending two suits." 295 U.S. at page 226, 55 S.Ct. at page 744.

United States v. Aetna Casualty & Surety Co., 1949, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171, in construing Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., sub silentio overruled Doleman v. Levine, supra. The court there held that in cases of partial subrogation either the insurer or the insured (in this case, the employee) might sue since each owned a portion of the substantive right and was a real party in interest. 338 U.S. at pages 381–382, 70 S.Ct. at pages 215–216. The court added that if one alone brought suit, the defendant (in that case, as in this one, the United States) might compel the other to be joined as a "necessary" party, Federal Rule of Civil Procedure 19(b), and if joinder could not be made, the defendant might be forced to defend two or more actions on the same tort. See St. Paul Fire & Marine

Insurance Co. v. Peoples Natural Gas Co., D.C.W.D.Pa.1958, 166 F.Supp. 11.

In the case before us a partial subrogee sought to assert its claim against the United States within the limitations period. If the United States wished to conclude the litigation in one suit it could have moved to join the injured longshoreman as a party plaintiff and proceeded to the merits. But it should no longer be able to avoid contesting the merits merely because a claim in excess of the subrogee's may still be made by the party from whom the subrogee derived its right. Only by permitting the subrogee to start the suit before the limitations period has run can we achieve a just and sensible result under the present wording of 33 U.S.C.A. § 933(b).